UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EMILY BOSH,<br><br>               Plaintiff,<br><br>   v.<br><br>USAA GENERAL INDEMNITY COMPANY,<br><br>               Defendant. | Case No. 3:24-cv-06016<br><br>ORDER GRANTING MOTION TO COMPEL APPRAISAL |

## I.   INTRODUCTION

Plaintiff Emily Bosh ("Bosh") moves the court for an order compelling appraisal for damage to her property insured by Defendant USAA General Indemnity Company ("USAA"). Dkt. 12. For the reasons explained below, the Court GRANTS Bosh's motion to compel appraisal.

## II.   BACKGROUND

On November 4, 2022, Bosh's home in University Place, Washington suffered damage from a "water burst from plumbing." Dkt. 1-3 ¶ 7; Dkt. 12 ¶ 2; *see* Dkt. 14 at 8. At the time of the damage, Bosh held a homeowner's insurance policy from USAA. Dkt. 1-3 ¶ 4; *see generally* Dkt. 12-2. The parties do not dispute that water damage is covered under Bosh's policy. Dkt. 1-3 ¶ 4; Dkt. 13 at 2; *see also* Dkt. 12-2 at 19 ("We insure against 'sudden and accidental,' direct,

physical loss to tangible property[.]"). Bosh reported the water damage and made a claim based on her insurance policy, which USAA began evaluating on November 7, 2022. Dkt. 1-3 ¶¶ 8–9; Dkt. 12 ¶ 2; Dkt. 14 ¶¶ 5–6.

On February 7, 2023, USAA responded to Bosh's claim and accepted partial coverage for the loss. Dkt. 12-3. The letter denied coverage for "any associated costs towards plumbing repairs or replacement of the failed source" because Bosh's policy excluded "wear and tear, marring or deterioration." *Id.* at 3. However, USAA accepted coverage for "the ensuing water damage the failed plumbing source caused" subject to Bosh's deductible. *Id.*

Bosh hired a public adjuster, Claims XP, to conduct a separate damage assessment. Dkt. 12 ¶ 6; Dkt. 1-3 ¶ 11. Claims XP sent an estimate to USAA totaling $102,883.35. Dkt. 14 at 26, 54. This total included the cost of replacing the wood floors, which USAA's initial estimate had not included. Dkt. 14 at 26; *see* Dkt. 12-4 at 15. The parties agreed to a reinspection of Bosh's property on May 9, 2023, and USAA revised its damage estimate to $77,451.24. Dkt. 14 ¶¶ 15–16; *see also id.* at 59–60, 62. After converting the total to its actual cash equivalent and subtracting the previously issued amount, USAA issued a second check to Bosh on September 4, 2023 totaling $53,122.59. Dkt. 12-7 at 3.

On September 3, 2024, Bosh, through her attorney, requested to reopen her claim and have USAA issue a supplemental payment based on a new engineering report that showed "extensive structural damage" to the property. Dkt. 12-8 at 1. Following the May 2023 reinspection, Bosh had hired a structural engineer to review the damage and her ongoing "concerns related to the prior water loss event." *Id.* at 4. Based on the structural evaluation, Claims XP revised its previous estimate to $192,940.78 in "replacement cost value, less prior payments and the deductible," with $169,320.28 of this total representing structural damage to the building. *Id.* at 1; *see generally id.* at 4–74.

ORDER GRANTING MOTION TO COMPEL APPRAISAL - 2

On October 24, 2024, USAA denied Bosh's request to reopen her claim, noting that the structural damage identified in the engineering report "appear[s] to be the result of failure to mitigate damages which is outlined in the policy as a member responsibility." Dkt. 14 at 154; Dkt. 14 ¶ 23. Then on November 12, 2024, USAA issued Bosh a Reservation of Rights letter, stating that it was "unable to confirm coverage at this time[.]" Dkt. 14 at 158. The letter cited her policy's "Duties After Loss" provision. *Id.* It states that "[i]n case of a loss to which the insurance may apply you must . . . (1) Protect the property from further damage[;] (2) Make reasonable and necessary repairs to protect the property . . . [and] [a]s often as we reasonably require . . . [s]how the damaged property." *Id.*

On October 31, 2024, Bosh sued USAA in Pierce County Superior Court for breach of contract, bad faith conduct, violations of the Insurance Fair Conduct Act, and violations of the Consumer Protection Act. Dkt. 1 ¶ 1; Dkt. 1-3 ¶¶ 23–66. USAA removed the lawsuit to this Court based on diversity jurisdiction. *See generally* Dkt. 1.

Bosh, through her attorney, also gave notice to USAA on December 9, 2024 that she was invoking her right to appraisal under her insurance policy. Dkt. 12-9 at 1; Dkt. 14 ¶ 26. The policy's appraisal provision states:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire . . . . The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Dkt. 12-2 at 28. Along with describing the appraisal process, the policy also describes its limitations:

> This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **"actual cash value," "replacement**

ORDER GRANTING MOTION TO COMPEL APPRAISAL - 3

> **cost,"** or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us.

*Id.* On December 18, 2024, USAA denied Bosh's request for appraisal. Dkt. 12-10 at 1. USAA explained it was denying the request because "the supplement is not covered and is denied under USAA contract exclusions for constant or repeated seepage and failure to mitigate and protect further damage and not showing the damage when USAA attempted to inspect." *Id.*

On January 7, 2025, Bosh moved the Court for an order to compel appraisal. Dkt. 12. USAA responded on January 22, 2025, Dkt. 13, and Bosh replied on January 28, 2025, Dkt. 15.

## III.     DISCUSSION

### A.     Legal standard

"Interpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect." *Smartsheet, Inc. v. Fed. Ins. Co.*, 620 F. Supp. 3d 1149, 1154 (W.D. Wash. 2022) (quoting *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002)). Under Washington law, appraisal provisions are "universally held to be valid and enforceable[.]" *Fin. Pac. Leasing Inc. v. RVI Am. Ins. Co.*, No. 2:21-CV-00756-LK, 2023 WL 4321855, at *15 (W.D. Wash. July 3, 2023) (citing *Keesling v. W. Fire Ins. Co. of Fort Scott, Kansas*, 10 Wn. App. 841, 845, 520 P.2d 622 (1974)). "Washington courts . . . have stated that appraisal provisions are 'justified in the expectation that [they] will provide a plain, inexpensive, and speedy determination of the extent of the loss.'" *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2014 WL 2533286, at *3 (W.D. Wash. June 5, 2014) (quoting *Keesling*, 10 Wn. App. at 845); *see also Dentists Ins. Co. v. Yousefian*, No. C20-

1076RSL, 2020 WL 8642137, at *1 (W.D. Wash. Nov. 16, 2020) ("Appraisal provides a sensible and efficient method for resolving valuation disputes.") (citation omitted).

But an appraisal provision is "not self-executing." *Keesling*, 10 Wn. App. at 845. If the insurer "does not pay the damages fixed by the appraisers, an insured must commence legal action, the appraisal must be confirmed by the court and judgment entered for the insured." *Id.* In sum, "[t]he authority and control over the ultimate disposition of the subject matter remains with the courts." *Id.* (citations omitted).

**B.     Appraisal is warranted.**

Bosh argues that the Court should compel appraisal based on the plain language of the policy and that Washington law endorses appraisal as a "preferable method for determining the amount of the loss" where, as here, that amount is contested. Dkt. 12 at 5–7. USAA does not dispute that appraisal clauses are generally enforceable. Dkt. 13 at 5. Rather, USAA argues that "before a claim is proper for appraisal, the parties must first come to an agreement as to the scope of repairs needed." *Id.* Because the parties do not agree "as to what is covered" under her insurance policy, USAA asserts that "any appraisal is inappropriate and premature based on the controlling language of the insurance contract, industry practice, and Washington law." *Id.* at 1, 6.

Bosh's argument is more persuasive. First, the controlling language of the insurance contract supports Bosh's appraisal rights. The appraisal provision provides that if "[i]f you and we fail to agree on the amount of loss, either may demand an appraisal of the loss." Dkt. 12-2 at 28. Thus, "[t]he insurance policy clearly allows a party to demand an appraisal." *Graham v. Country Mut. Ins. Co.*, No. 2:20-CV-00189-SAB, 2021 WL 5239795, at *2 (E.D. Wash. Feb. 9, 2021); *see also Bennett v. Homesite Ins. Co.*, No. C21-1422 MJP, 2022 WL 4355710, at *2–3 (W.D. Wash. Sept. 20, 2022) (citing policy that "allows either party to 'demand an appraisal of

the loss' if the parties 'fail to agree on the amount of loss'" as establishing that "[u]nder the plain terms of the insurance policy . . . [plaintiffs] are entitled to an appraisal[.]"). Accordingly, Bosh "has the right to demand that [USAA] engage in a process that it itself agreed to in the contract." *Graham*, 2021 WL 5239795, at *2.

USAA argues that Bosh's appraisal rights are not triggered because appraisal only applies to "disputes concerning the *amount of loss* – not, as Plaintiff now asks the Court to order – the *scope of repairs*." Dkt. 13 at 5 (emphasis in original). But USAA mischaracterizes Bosh's demand. Bosh concedes that "[a]ppraisal is not intended to determine whether certain damage is covered under the insurance policy's terms." Dkt. 15 at 1. Instead, "the role of appraisal is to determine the amount of the loss," which requires appraising "the extent of the damaged property and the price of repairing it." *Id.* at 2; *see Keesling*, 10 Wn. App. at 845 ("[An appraisal] provision is justified in the expectation that it will provide a plain, inexpensive and speedy determination of the *extent of the loss*.") (emphasis added); *see also* Dkt. 12-2 at 28 ("The appraisers and umpire are . . . not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us.").

Since both parties agree that appraisal rights in insurance policies are enforceable, and that appraisal's narrow purpose is to determine the amount of loss, what remains of the opposition to appraisal here? USAA's underlying contention appears to be with the order of operations: "Scope must be determined prior to determining the amount of the loss." Dkt. 13 at 6; *see also id.* ("Plaintiff's demand for appraisal is premature, given that she has failed to satisfy the condition precedent of an agreement as to coverage . . . before first triggering appraisal."). But neither the plain language of the appraisal provision in Bosh's insurance policy nor Washington law imposes such a prerequisite.

ORDER GRANTING MOTION TO COMPEL APPRAISAL - 6

*Graham* is instructive. There, the plaintiff's home was damaged by wind, a covered peril under her homeowner's insurance policy. *Graham*, 2021 WL 5239795, at *1. The insurer accepted coverage for the loss but disagreed with plaintiff's third-party estimate of the extent of the damage, which would require the insurer to replace rather than repair her roof. *Id.* The insurer refused to issue a supplemental payment to the plaintiff, stating that ordinary wear and tear, not covered under plaintiff's policy, was responsible for the extent of damage claimed. *Id.* The plaintiff sued her insurer for breach of contract, bad faith, and violations of the Insurance Fair Conduct Act, among other claims, and invoked her right to appraisal under her policy. *Id.* at 1–2. The insurer refused appraisal, and when plaintiff brought a motion to compel, the insurer argued "it should not be compelled to engage in the appraisal process because the dispute between the parties is one of coverage, not amount of loss, and coverage disputes cannot be resolved through appraisal." *Id.* at 2.

After confirming that the language of the insurance policy "clearly" allowed the plaintiff to demand appraisal, the court addressed the insurer's contention that the dispute about coverage precluded, or at least must predate appraisal. *Id.* While acknowledging "that determining the amount of loss is a separate issue from determining whether the loss is covered under the policy and that the latter cannot be resolved by appraisal," the court held that the mere existence of parallel disputes "does not relieve Defendant of the obligation to engage in the appraisal process in the first place." *Id.*; *see, e.g.*, *Kochendorfer v. Metro. Prop. & Cas. Ins. Co.*, No. C11-1162-MAT, 2012 WL 1204714, at *1 (W.D. Wash. Apr. 11, 2012) (describing that the parties "entered into an appraisal process to resolve the dispute as to amount of loss" due to fire, and then litigated the insurer's denial of coverage); *MKB Constructors*, 2014 WL 2533286, at *4 (finding "no case . . . permitting the parties to go to trial first and then subsequently submit to the policy's appraisal process in order to determine the value of the loss").

ORDER GRANTING MOTION TO COMPEL APPRAISAL - 7

Like the plaintiff in *Graham*, Bosh's appraisal demand does not require a "meeting of the minds, or an adjudication in this Court" on whether all her home's water damage is covered under the policy for an appraiser to assess the extent of water damage to her home. *See* Dkt. 13 at 6; *see also Montler v. Belfor USA Grp., Inc.*, 28 Wn. App. 2d 1006, at *11 (2023), *review denied*, 542 P.3d 570 (Wash. 2024) (citing with approval the appraisal umpire explaining that his task is to assess the amount of property damage to the home and afterward, the parties can "fight about how much of that cost is attributable to different events"). As other cases in this district have found, when "[t]he parties contractually agree[] that valuation would be handled by the experts . . . the Court sees no reason to delay that valuation simply because other triable issues exist." *Dentists Ins. Co.*, 2020 WL 8642137, at *1 (citing *MKB Constructors*, 2014 WL 2533286, at *3–4).

USAA cites two cases in support of its position that coverage disputes be resolved before appraisal, but both involve distinguishable facts. Dkt. 13 at 5–6. First, in *Tinsley v. American Family Connect Property and Casualty Insurance Company*, the insurer denied all coverage for damage to plaintiff's dock because wave damage was excluded from the policy. No. 2:22-CV-0099-TOR, 2023 WL 7501385, at *1 (E.D. Wash. Nov. 13, 2023). The court briefly considered plaintiff's appraisal demand, even though "there was no motion to compel appraisal" before the court. No. 2:22-CV-0099-TOR, 2022 WL 18675993, at *3 (E.D. Wash. July 14, 2022). While the court concluded that "appraisal is not appropriate until the issue of coverage is resolved," that case involved a coverage dispute that would obviate the need for appraisal if resolved in the insurer's favor, since the insurer would not be responsible for any damage. *See id.* Here, USAA has already opened coverage for the water damage caused by the failed plumbing source, but disputes how much of the property damage it is liable for. Dkt. 12-3 at 3; *see generally* Dkt. 13. Unlike in *Tinsley*, resolution of contested coverage will not resolve the factual question of the

ORDER GRANTING MOTION TO COMPEL APPRAISAL - 8

amount of damage that USAA may be responsible for, making appraisal appropriate. *Tinsley*, 2022 WL 18675993, at *3; *see also Graham*, 2021 WL 5239795, at *1 (insurer accepting partial coverage for loss when appraisal is invoked); *Kochendorfer*, 2012 WL 1204714, at *1 (same); *Montler*, 28 Wn. App. 2d 1006, at *2 (same).

USAA also cites *Mercer International, Inc. v. United States. Fidelity & Guaranty Company*, 938 F. Supp. 680 (W.D. Wash. 1996). There, plaintiff sued the insurer to enforce their policy's valuation clause, or "agreed value amount," for a fire loss event. *Id.* Plaintiff also moved to compel appraisal. *Id.* at 683. The court denied the motion to compel appraisal, concluding that the "controversy between insurer and insured is over terms in the contract." *Id.* Like the facts in *Tinsley*, resolution of the policy language in favor of the plaintiff would render appraisal meaningless because the amount of loss would be contractually set. *See id.* at 680. Where, as here, a live issue exists as to the "value of the insured[']s losses[,]" regardless of the contested coverage, appraisal is warranted. *See Dentists Ins. Co.*, 2020 WL 8642137, at *1.

Along with the plain language of the policy and the line of cases that support Bosh's appraisal demand, USAA's proposed interpretation would also contravene the purpose of appraisal. "An appraisal provision . . . is justified in the expectation that it will provide a plain, inexpensive and speedy determination of the extent of the loss." *Keesling*, 10 Wn. App. at 845 (citation omitted). Imposing an extracontractual requirement to first resolve or adjudicate a coverage issue "does not advance the goals or purpose of the policy's appraisal process[,]" but "undermines them." *MKB Constructors*, 2014 WL 2533286, at *4. Finally, any concerns USAA holds about coverage issues being swept into the appraisal process, *see* Dkt. 13 at 6–7, are mitigated by appraisal's narrow focus and the Court's continuing role in the process. *Keesling*, 10 Wn. App. at 845 (noting that an appraisal provision is "not self-executing" and "[t]he authority and control over the ultimate disposition of the subject matter remains with the

courts"): *see also* Dkt. 12-2 at 28 ("The appraisal award cannot be used by either you or us in any proceeding concerning coverage exclusions, forfeiture provisions, conditions precedent, or other contractual issues."). Accordingly, the Court finds that Bosh has the right to invoke appraisal under the policy.

## IV.    CONCLUSION

The Court GRANTS the motion to compel appraisal (Dkt. 12).

Dated this 7th day of May, 2025.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING MOTION TO COMPEL APPRAISAL - 10